**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GATX Technology Corporation**, | : Civil Action No. |
| *Plaintiff*, | : |
| v. | : |
| **Commonwealth Capital Corp and Avon Products, Inc.**, | : |
| *Defendant*. | : |

# ORDER

**AND NOW,** this _____ day of _____, 2002, upon consideration of the Summary Judgment Motion of defendant Commonwealth Capital Corporation, and any response thereto, it is hereby ORDERED that the Summary Judgment Motion is GRANTED. The sum of $411,784.53 deposited in the Registry of the Court by plaintiff GATX Technology Corporation, is to be paid over forthwith to defendant Commonwealth Capital Corporation. That sum shall be off-set against any additional damages for which co-defendant Avon Products, Inc. may be found liable to Commonwealth Capital Corporation.   In taking the $411,784.53 payment, Commonwealth Capital Corporation reserves all its rights in this litigation.

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GATX Technology Corporation**, | : Civil Action No. |
| *Plaintiff*, | : |
| v. | : |
| **Commonwealth Capital Corp and Avon Products, Inc.**, | : |
| *Defendant*. | : |

### *PLAINTIFF COMMONWEALTH CAPITAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S INTERPLEADER COMPLAINT*

Pursuant to Federal Rule of Civil Procedure 56, Defendant Commonwealth Capital Corp., by and through its counsel, hereby moves this Honorable Court to order summary judgment in Commonwealth Capital's favor, for the reasons set forth more fully in the attached Memorandum of Law.

Respectfully submitted,
**SPECTOR GADON & ROSEN, P.C.**

By:_____
Daniel J. Dugan, Esquire
Bruce Bellingham, Esquire
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8872

June 14, 2002

Attorneys for Commonwealth Capital Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GATX Technology Corporation**, | : Civil Action No. |
| *Plaintiff*, | : |
| v. | : |
| **Commonwealth Capital Corp and Avon Products, Inc.**, | : |
| *Defendant*. | : |

### *MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF COMMONWEALTH CAPITAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT*

**I.     Introduction**

GATX Technology Corporation's ("GATX's") interpleader Complaint alleges that it has been holding proceeds of $ 396,837, plus interest, or $411,784.53 in all, that it desires to return to one or more of the defendants. ¶ 1. It describes these as "disputed funds." However, based upon the judicial admissions made in pleadings in this and a related action now pending before this Court made by plaintiff GATX and co-defendant Avon Products, Inc. ("Avon"), there are no genuine disputed claims to the funds. Under binding judicial admissions made by both, neither of those parties do or can assert a claim to the $411,784.53. Movant Commonwealth Capital Corporation ("Commonwealth") is the sole entity claiming those funds, and the $411,784.53 should, accordingly, be released to it.

**II.     Summary of Underlying Dispute**

The underlying, related litigation concerns an office equipment lease originally entered into in July, 1997 by El Camino Resources ("El Camino"), as lessor, and Avon as lessee. El Camino assigned its interest in the lease to Commonwealth, and Avon executed a Notice of Assignment acknowledging Commonwealth's ownership of the equipment it leased. However,

El Camino continued to administer the lease by billing for and receiving lease payments by agreement with Commonwealth.

On information and belief, El Camino continued to own unrelated equipment leases and, in or about February, 2001, some or all of these were sold to GATX. El Camino did not sell GATX the lease on the equipment leased to Avon. The lease of equipment to Avon was owned by Commonwealth, not by El Camino. Avon, however, alleges that GATX purported to sell it the equipment which was owned by Commonwealth. GATX admits that it did not acquire title to Commonwealth's equipment, and it admits Commonwealth did not agree its sale of the equipment to Avon.

Avon alleges it believed that it purchased Commonwealth's equipment from GATX and it therefore ceased making rental payments in June, 2001, and that it made an additional rental payment to GATX for July, 2001. El Camino and, later, El Camino and Commonwealth together made demands upon Avon for lease payments, but Avon disregarded their demands because, allegedly, it believed it had acquired title to the equipment from GATX. Commonwealth has sued Avon for rental payments due upon the defaulted equipment lease. Avon defends contending that it acquired good title to Commonwealth's equipment from GATX and, in the alternative, it asserts claims over against GATX and El Camino alleging it reasonably relied upon misrepresentations by GATX that led it to believe it purchased the equipment and thus caused it to cease honoring its rental obligations.

If Commonwealth is correct in its contention that Avon's lease obligations to Commonwealth are ongoing, then Avon will owe Commonwealth an amount in excess of $762,045.88 plus interest and the costs of this action including reasonable attorneys' fees, as

alleged in the Amended Complaint. If Avon is correct in its contention that it acquired good title to Commonwealth's equipment for value from GATX, without Commonwealth's consent, the value that it gave as consideration is the $411,784.53 of which the "former" title holder, Commonwealth, should obviously have immediate use just as Avon has the use of Commonwealth's equipment. Avon cannot, and does not, claim that it is entitled to *both* retain Commonwealth's equipment *and* recover the $ 411,784.53 purported purchase price. Commonwealth cannot and does not contend it is entitled to recover *both* the $ 411,784.53 *and* an amount in excess of $762,045.88 plus interest and the costs alleged as damages for breach of Avon's lease obligations. Avon will owe the $ 411,784.53 to Commonwealth either as consideration for the involuntary sale of the equipment (on Avon's theory) or as partial payment on its arrears in rental payments (on Commonwealth's theory), which are greater than $ 411,784.53.

### III.    GATX Does Not Claim the Funds

Paragraph 17 of GATX's Complaint contains the following admission:

> 17.    GATX does not claim any entitlement to either the Disputed Funds or the July Rent.

### IV.    Avon Does Not Claim the Funds

Avon has judicially admitted it has no interest in the "disputed funds" and cannot, as a matter of law, contend otherwise in order to thwart Commonwealth's right to have the funds paid out to it now. In its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) for failure to Join a Party Under Rule 19, filed on March 19, 2002, Avon admitted:

> 17.    Thereafter, Avon purchased the eight printers from GATX in August 2001 for a purchase price [of] $419,000. A true and correct copy of the invoice for this purchase is attached hereto as Exhibit I.

> 18.   Avon is without knowledge as to what GATX did with the $46,000 July 2001 rental payment and the $419,000 purchase paid to it by Avon. On information and belief, GATX paid the monies to Commonwealth's administrator on the Avon lease, El Camino.
>
> 23.   If any money is owed to plaintiff, it is owed by El Camino and GATX as Avon paid these entities the rental payments and the purchase price of the equipment.
>
> 28.   Furthermore, without the joinder of El Camino and GATX, Avon is subject to a substantial risk of incurring multiple liability in that it has already paid out all sums allegedly due to plaintiff to El Camino and GATX.

*See* pertinent pages of Avon's Motion to Dismiss attached as Exhibit "A." In its Answer to the

Amended Complaint, Avon admitted:

> 56.   Thereafter, in accordance with Schedule 054, Avon purchased the eight printers from GATX in August 2001 for the negotiated purchase price of $419,000. A true and correct copy of the invoice for this purchase is attached hereto as Exhibit M.
>
> 57.   On information and belief, GATX subsequently tendered to Commonwealth all monies it had received from Avon, for rent for July 2001 and for the purchase of the printers. See Exhibit N hereto.
>
> 73.   Commonwealth is estopped from denying that Avon's termination of the lease was effective and binding on it.
>
> 74.   Commonwealth is estopped from claiming ongoing rent payments are due.
>
> 76.   Commonwealth is estopped from challenging the purchase price paid by Avon for the printers.
>
> 77.   Commonwealth is estopped from denying that the transfer of title to Avon for the printers is binding on Commonwealth.

*See* pertinent pages of Avon's Answer, attached as Exhibit "B."

In other words, Avon admits that it paid Commonwealth, through its alleged agent GATX, the rental and purchase price for title to the equipment. The equipment, it contends, belongs to it and the alleged purchase payment belongs to Commonwealth. Avon thus asserts

4

no claim to the payment. Avon contends that it acquired title to Commonwealth's property and it denies that it owes rental payments to Commonwealth amounting to the larger amount prayed for in the Amended Complaint, but it judicially admits that it has retained Commonwealth's equipment without rental payments and that, even if Avon prevails on every issue in dispute and acquires title to Commonwealth's property by estoppel, Commonwealth is entitled to *at least* the amount of the purported purchase price payment. The only dispute is whether Commonwealth is entitled to the much larger contract damages that it claims.

In its Answer to the Amended Complaint, Avon admitted:

> 81.   At oral argument, Commonwealth admitted that Avon is entitled to credit for any and all lease payments made by Avon to El Camino.

*See* Exhibit "B." Avon at one point contended that Commonwealth was seeking double recovery from it for payments it made to Commonwealth through El Camino. Such argument was baseless, and Avon now admits understanding that Commonwealth makes no claims for double recovery. Exactly the same principle governs any payment that Avon made to GATX which, Commonwealth concedes, will be credited to any damages for which Avon may be found liable to Avon for breach of the lease agreement. While Commonwealth did not authorize GATX to receive a purchase price payment, that is irrelevant to Avon as Commonwealth now admits that any such payment, conveyed to Commonwealth now, will be an offset to any damages for which Avon may become liable to Commonwealth.

In no case does Avon contend it is entitled to *both* use Commonwealth's equipment from August 2001 to the present without payment *and* recover the payment it made to GATX. *On Avon's theory,* Commonwealth was due $ 411,784.53 (less interest) in August, 2001. Commonwealth is due substantially more on its own theory.

5

Exhibit "N" to Avon's Answer is a letter dated March 28, 2002 from D. Lockwood Gray of GATX to Avon's counsel.  In that letter, Mr. Gray wrote as follows:

> Since Commonwealth would not accept the money, we propose returning it to Avon, in your care, in the form of a wire.  Please contact Don Kohlhaas at 813-289-7084 and provide him with your firm's wire instructions so that we may return these funds immediately.

*See* letter attached hereto as Exhibit "C."   But Avon did not agree to receive the funds and GATX instead filed this interpleader action.  Not only does Avon have no legally cognizable claim to the money, it refused to accept the money when it was offered by GATX unconditionally.  By contrast, GATX has never offered to pay the funds to Commonwealth unconditionally.

**V.     GATX's Request to be Dismissed from the Litigation Is Premature and Over-broad**

Commonwealth has no objection to discharging GATX of liability relating to its deposit of money in the Registry of the Court.  That is, no liability should attach to the mere fact that GATX elected to deposit the money in the Registry and file a complaint and motion for interpleader as opposed to deciding which party to pay (even though only Commonwealth claimed a right to the funds).  That GATX should be discharged of "any other liability relating to the leasing and sale of eight IBM Printers known as 'Schedule 18'," as its proposed Order suggests, is premature, over-broad, and utterly without legal justification.  While Commonwealth was unaware of GATX's interference with Schedule 18 in spring 2001, and many facts remain unknown to Commonwealth, the evidence could well show that GATX engaged in wrongdoing "relating to the leasing and sale of eight IBM Printers known as 'Schedule 18'," for which it may be liable to other parties.  It would then be improper to immunize GATX from liability because it deposited funds with the Court and filed an

6

interpleader action.

      While no liability should attach to GATX's decision to file an interpleader complaint to resolve the disposition of the deposited funds, liability might well attach to GATX for coming into possession of the payment in the first place.  The evidence might show that GATX converted Commonwealth's property and purported to sell it as the owner when it knew or should have known the property belonged to Commonwealth.  The evidence might show that GATX interfered with Commonwealth's contractual relations, causing Commonwealth damages.  While Commonwealth may only recover its losses relating to Schedule 18 once, it may or may not elect to file legal claims against GATX for tortious acts in the alternative to the contractual and quasi-contractual claims it has pleaded against Avon.

      Whether it elects to do so is Commonwealth's business alone but, while such action remains timely, there appears to be no basis for immunizing GATX from the consequences of its acts and its memorandum of law in support of its motion for interpleader suggests none.  Indeed, while GATX seeks to analogize itself to an uninvolved stakeholder, like a bank entitled to discharge when it files an interpleader in the face of conflicting claims to the same account, the allegations set forth in Avon's Third Party Complaint charging GATX with active and mischievous involvement in fomenting the underlying dispute expose GATX's attempt to style itself to a neutral stakeholder as disingenuous.  See Counts IV, V, VI and VII of Avon's Third Party Complaint attached hereto as Exhibit "D."  If Avon's allegations are supported by evidence, Commonwealth may have just tort claims against GATX on which it is entitled to recover in the alternative to its contract claims against Avon.

**VI.**    **Summary Judgment May Properly Rest Upon
the Judicial Admissions in the Pleadings of GATX and Avon**

Commonwealth seeks an Order of summary judgment in its favor based on admissions made in pleadings and court documents by which both GATX and Avon establish that neither does, nor can, claim the $ 411,784.53 that GATX deposited with this Court.  Commonwealth is the only claimant and is, therefore, entitled to summary judgment on GATX's complaint.

Commonwealth's decision to seek summary judgment based upon judicial admissions is sound.  A judicial admission in a pleading results when a litigant affirmatively alleges a matter, states in its answer that another litigant's allegation is true, or fails properly to deny the other litigant's allegation.*Deputron v. Young*, 134 U.S. 241 (1890) (admission of jurisdiction in Answer cannot be later controverted); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992) (assertion in pleading is binding throughout course of proceeding).   Courts of Appeals have agreed that judicial admissions are "proof possessing the highest possible probative value; . . . facts established not only beyond the need of evidence to prove them, but *beyond the power of evidence to controvert them*."    *Best Canvas Products & Supplies v. Ploof Truck Lines*, 713 F.2d 618, 621 (11th Cir. 1983) (emphasis added) (quoting *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941)). When a litigant, directly or through counsel  or agent,  has made a judicial admission**,** the litigant may not introduce evidence to contradict its judicial admission.  *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984) (statement of counsel is binding as judicial admission).

**VII.    Conclusion**

Regardless of the ultimate outcome of the related litigation, the $411,784.53 is due to Commonwealth on any theory of the case; and no other party can claim any interest in it.  Moreover, by judicial admission, no other party claims any interest in the funds.  While

Commonwealth does not acquiesce in the putative sale of its property to Avon by GATX without its permission, Avon has possessed and had the use of the equipment without making any rental payments since July, 2001 and without its alleged purchase price payment being conveyed to Commonwealth. Commonwealth should have the use of the $ 411,784.53 which is due it under any theory of the case and which no other party claims. Avon's only colorable interest in the funds is to secure assurance that the funds will be credited to any damages for which it may be found liable to Commonwealth.

                Respectfully submitted,

                **SPECTOR GADON & ROSEN, P.C.**

By:_____
                Daniel J. Dugan, Esquire
                Bruce Bellingham, Esquire
                1635 Market Street, 7th Floor
                Philadelphia, PA 19103
                (215) 241-8872

June 14, 2002                Attorneys for Commonwealth Capital Corporation

## CERTIFICATE OF SERVICE

I, Bruce Bellingham, hereby certify that on the below date I served a true and correct copy of the attached Plaintiff Commonwealth Capital Corporation's Answer to Defendant Avon Products's Counter-claims upon the following counsel for defendant via First Class Mail:

W. Bourne Ruthrauff, Esq.
Beth A. Carter, Esq.
Bennett, Bricklin & Saltzburg, LLP
1601 Market St., 16th Floor
Philadelphia, PA 19103

William Goldstein, Esq.
Groen, Laveson, Goldberg & Rubenstone
Four Greenwood Square, Ste. 200
Bensalem, PA 19020-8544

Noah H. Charlson, Esq.
Bazelon, Less & Feldman, P.C.
1515 Market St., Ste. 700
Philadelphia, PA 19102-1907


**SPECTOR GADON ROSEN, P.C.**


By: _____
      Bruce Bellingham

Dated: June 14, 2002